**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770



August 9, 2022

LETTER TO COUNSEL

      RE:   *Kevin D. v. Kijakazi, Acting Commissioner of Social Security*
              Civil No. GLS 21-0567

Dear Counsel:

      Pending before this Court are cross-motions for summary judgment, filed by Plaintiff Kevin Lawrence D., and the Social Security Administration. (ECF Nos. 11, 14). The Plaintiff has also filed a reply brief. (ECF No. 15). Upon review of the pleadings and the record, the Court finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2021).

      The Court must uphold the decision of the Social Security Administration ("SSA" or "the Agency") if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* For the reasons set forth below, I will deny the motions, reverse the Commissioner's decision in part, and remand the case back to the SSA for further consideration.

**I.    BACKGROUND**

      Plaintiff filed a Title XVI Application for supplemental security income on January 30, 2018, alleging that disability began on May 18, 2016. (Tr. 12). This claim was initially denied on May 2, 2018, and upon reconsideration, denied again on October 18, 2018. (*Id.*). On November 16, 2018, Plaintiff filed a written request for a hearing, which was granted. The hearing was conducted on May 15, 2020 by an Administrative Law Judge ("ALJ"). Due to a recording issue with the May 15, 2020 hearing, a supplemental hearing was held on August 4, 2020. (*Id.*). On August 31, 2020, the ALJ found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 14-22). On January 14, 2021, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final and reviewable decision of the SSA. (Tr. 1). *See also* 20 C.F.R. §422.210(a).

*Kevin D. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-0567
August 9, 2022
Page 2

**II.     ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is deemed to have a disability if his/her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers in the region where such individual lives or in several regions of the country."  42 U.S.C. § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a).  *See e.g., Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).  The steps used by the ALJ are as follows: step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations ("the Listings").  If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, the ALJ proceeds to step four.  At step four, the ALJ assesses the claimant's residual functional capacity ("RFC").  A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two."  *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)).  Also at step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments.  Finally, at step five, the ALJ analyzes whether a claimant could perform jobs other than what the claimant performed in the past, and whether such jobs exist in significant numbers in the national economy.  *See* 20 C.F.R. §§ 416.920(a)(4)(i) – 416.920(a)(4)(v).

 At steps one through four, it is the claimant's burden to show that he is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016).  If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled.  *Hunter v. Sullivan*, 993 F.3d 31, 35 (4th Cir. 1992).

Here, the ALJ evaluated Plaintiff's claim by following the sequential evaluation process outlined above.  (Tr. 14-22).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 30, 2018, the date Plaintiff filed an application for supplemental social security income.  (Tr. 14).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, degenerative disc disease of the spine with radiculopathy and cervicalgia, pes planus, posttraumatic stress disorder (PTSD), bipolar disorder, depressive disorder, anxiety disorder, and panic disorder.  (*Id.*).  The ALJ found these impairments

were severe because these are medically determinable impairments that, when considered either individually or in combination with other impairments present, significantly limit the Plaintiff's functional abilities to perform basic work activities as required by SSR 85-28 and 16-3p. (*Id.*). However, at step three the ALJ also determined that none of Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings. (Tr. 15-17). Taking into account Plaintiff's severe impairments, the ALJ next assessed the claimant's RFC. Despite Plaintiff's severe impairments, the ALJ determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 416.967(b) except he can only occasionally balance, stoop, kneel, crouch, crawl and/or climb ramps and stairs; he can never climb ladders, ropes or scaffolds; he can only occasionally work at unprotected heights or with moving mechanical parts; and he can only occasionally work in humidity, wetness or extreme heat. He can perform simple, routine and repetitive tasks but not at a production rate pace; he is able to interact occasionally with co-workers, supervisors and the public; and he is able to make simple work-related decisions.

(Tr. 17). At step four, the ALJ found that Plaintiff was unable to perform past relevant work. (Tr. 20). Before making a finding regarding step five, the ALJ conducted a hearing. At that hearing, the ALJ posed several detailed hypothetical questions to a vocational expert ("VE"). The first question mirrored the language ultimately used in Plaintiff's RFC. (Tr. 50). In response to that scenario, the VE testified that a hypothetical person of Plaintiff's age, education, work experience and limitations could not engage in the past work that Plaintiff had performed. (Tr. 51). However, the VE testified that this person could perform unskilled work at the light exertional level: collator operator, retail marker, and an electrical assembler. (*Id.*). The second hypothetical added the limitation that the individual would be "off task" for 15 % of an eight-hour workday. The VE opined that the hypothetical individual could not perform the three jobs identified, let alone any jobs that required the person to be "off task" for more than 10 % of the day. (Tr. 51-52). The third hypothetical further added the limitation that the individual would be absent from work two days/month. The VE opined that the hypothetical individual could not perform the three jobs identified nor could he perform any job if he were absent from work more than one day/month. (Tr. 52). The final hypothetical assumed that given certain mental and physical impairments the individual would be unable to "engage in sustained work activity on a regular and continued basis for eight hours a day, five days a week, or a 40-hour workweek." (*Id.*). The VE opined that there would be no work that the hypothetical person could perform. (*Id.*).

Regarding step five, then, the ALJ opined that based on the testimony of the vocational expert, i.e., considering Plaintiff's "age, education, work experience, and [RFC]" Plaintiff was not disabled. Plaintiff could perform other work existing in significant numbers existing in the national economy, e.g., as a collator operator, retail marker, or an electrical assembler. (Tr. 21-22).

### III. DISCUSSION

In requesting summary judgment, Plaintiff advances two arguments: (1) that the ALJ's step-five determination is not supported by substantial evidence because the hypothetical posed to the VE at step four was inadequate; (2) that the ALJ failed to properly evaluate whether Plaintiff's impairments meet or medically equal Listing 1.04A. (ECF No. 11-1, "Plaintiff's Br.," pp. 9-18). In general, the SSA counters that both arguments raised by Plaintiff lack merit. (ECF No. 14-1, "Defendant's Br.," pp. 5-11).

I have carefully reviewed the arguments and the record. I find persuasive Plaintiff's argument that the ALJ's failure to define the phrase "production rate pace" for the VE or in his opinion frustrates meaningful review by this Court. Accordingly, I find that remand is appropriate, for the reasons set forth herein.

Pursuant to 20 C.F.R. § 416.945(a)(1), a claimant's RFC captures her ability to do physical and/or mental work activities for a sustained period of time, given her limitations. Put another way, a claimant's RFC is defined as the "most that a claimant can do despite her limitations." *Britt v. Saul*, No. 19-2177, 2021 WL 2181704, at *5 (4th Cir. May 28, 2021).

To fashion an RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)(quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)); *see also* 20 C.F.R. § 416.945(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996). In assessing a claimant's RFC, the ALJ must describe the claimant's ability to perform "sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week)," describing the "maximum amount of each work-related activity" that a claimant can perform. SSR 96–8p, 1996 WL 374184, at *7. An ALJ's RFC determination should include a "narrative discussion describing how the evidence supports each conclusion citing specific medical facts . . . and nonmedical evidence." (*Id.*). The Fourth Circuit has held that a "proper RFC analysis has three components: (1) evidence; (2) logical explanation, and (3) conclusion. *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019). In her narrative discussion, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Petry v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG 16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (citation omitted). Furthermore, an ALJ's logical explanation is just as important as the other two components of the RFC analysis. *Rosalind M. v. Saul*, Civ. No. GLS 19-2791, 2020 WL 6450503, at *2 (D. Md. Nov. 3, 2020).

At step three of the analysis, the ALJ found that Plaintiff had a moderate limitation in concentration, persistence, and pace, and that he was mildly limited in his area of mental functioning (i.e., ability to "focus attention on work and to stay on task at a sustained rate"). (Tr. 16). Next, at the hearing, ALJ posed a question to the VE that mirrored the language ultimately used in Plaintiff's RFC, namely that the individual would be "off task" for 15 % of an eight-hour

*Kevin D. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-0567
August 9, 2022
Page 5

workday. In response to that question, the VE opined that the hypothetical individual could not perform any jobs that required the person to be "off task" for more than 10 % of the day. (Tr. 51-52). The ALJ found that Plaintiff had the RFC to perform light work. (Tr. 17). Considering Plaintiff's mental and physical impairments, the ALJ concluded, in relevant part that:

> [Plaintiff] can perform simple, routine and repetitive tasks but not at a production rate pace; he is able to interact occasionally with co-workers, supervisors and the public; and he is able to make simple work-related decisions.

(Tr. 17). As to his successful argument, Plaintiff asserts that part of the hypothetical posed to the VE, namely that Plaintiff could work but "not at a production rate pace," included the phrase "production rate pace." According to the Plaintiff, the error arises because this phrase is not defined in Social Security Regulations nor the Dictionary of Occupational Titles, and is subject to multiple interpretations. Thus, the VE could not possibly have understood the limitation, nor reasonably concluded that Plaintiff had the capacity to perform work existing in the national economy. Because the absence of a definition led the VE to consider a flawed hypothetical and to reach an erroneous conclusion, remand is required. (Plaintiff's Br., pp. 11-13). In support of his argument, Plaintiff relies principally on *Thomas v. Berryhill, supra.*

The Agency raises the following counter-arguments. First, that the ALJ "elaborated on the limitations required to accommodate" Plaintiff's impairments by "explaining that [Plaintiff] needed an environment with only simple work-related decision." ("Defendant's Br.," pp. 5-6). Relying upon *Hughes v. Saul, infra*, then,[1] the SSA maintains that the ALJ used sufficient "descriptors" from which this Court can infer that the ALJ adequately accounted for Plaintiff's limitations when assessing his RFC. (*Id.*). Second, Plaintiff only speculates that the VE did not understand the meaning of "not at a production rate pace," as the record does not reflect that the VE was confused by this phrase. (Defendant's Br., pp. 6-7). Thus, any alleged error in not defining the phrase is harmless. (*Id.*)

I find *Thomas v. Berryhill*, *supra*, instructive. In *Thomas,* the ALJ denied the claimant's application for SSI. The claimant argued, *inter alia*, that the ALJ erred in evaluating claimant's RFC. *Thomas, supra*, at 311. The Fourth Circuit found that there were several missteps in the ALJ's RFC evaluation. Of particular relevance here, is the Fourth Circuit's holding that the ALJ's failure to define "production rate or demand pace" made the ALJ's RFC assessment flawed, because without such a definition, the appellate court could not meaningfully review the ALJ's decision. *Id.* at 311-12.

In this case, Plaintiff correctly casts the issue as one involving a flawed hypothetical to the VE and a defect in the RFC assessment, as the hypotheticals contained the ALJ's RFC assessment of Plaintiff. The hypotheticals posed to the VE included the phrase "not at a production rate pace,"

---

[1] In its summary judgment motion, the SSA cites to a case simply as "*Ross*," yet fails to offer a full citation. (Defendant's Br., p. 6). Thus, the Court declines to analyze that case.

however, the ALJ failed to define what this meant. (Tr. 50-52). Thus, the Court is unable to glean from the record what the ALJ meant by using this term. In addition, at no point in the ALJ's decision did he explain what he meant by including the "not at a production rate pace" limitation. I find that this phrase is analogous to the phrase "production rate or demand pace" that the Fourth Circuit found problematic in *Thomas*. Namely, I do not know what the phrase means, so I cannot determine what pace the ALJ is saying Plaintiff can work. Is it a fast pace, a slow pace? A medium pace? Without an explanation, I do not understand how the ALJ determined Plaintiff's ability to perform work on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week), especially in light of the VE's testimony that no jobs existed if a person was "off task" for more than 10% per day. (Tr. 51-52). Accordingly, remand is warranted so that the ALJ can clarify both this limitation in Plaintiff's RFC and the related hypothetical posed to the VE, such that one can infer that substantial evidence exists to support the ALJ's ultimate finding on non-disability. *See Carolyn G. v. Kijakazi*, Civ. No. ADC 20-1363, 2021 WL 2982129, at *7 (D. Md. Jul. 15, 2021)(remand required where ALJ did not define "production rate paced work" in the RFC or hypothetical to the VE); *Keith B. v. Saul*, Civ. No. GLS 19-803, 2020 WL 3439261, at *3 (D. Md. June 23, 2020)(remand required where ALJ did not define "production pace work" in the RFC or hypothetical to the VE); *Travis X. v. Saul*, Civ. No. GJH 18-1210, 2019 WL 4597897, at *5 ( D. Md. Sept. 20, 2019)(remand required where ALJ did not define "production rate pace" in the RFC or hypothetical to the VE); *Nora P. v. Comm'r Soc. Sec.,* Civil No. SAG 18-1604, 2019 U.S. Dist. LEXIS 68383, at *5 (D. Md. Apr. 23, 2019)(remand warranted where RFC and related hypothetical failed to define "no fast pace or strict production requirements").

Defendant maintains that there was no error, relying on *Hughes v. Saul*, 2021 WL 2186447, at * 13 (M.D.N.C. May 28, 2021). *Hughes* is distinguishable from this case, in that the ALJ in *Hughes* defined the term "production rate pace." *Id.* at *12-13. The SSA also avers that, assuming that the ALJ erred, such error is harmless. The Agency relies on *Odell v. Saul*, Civ. No. KDB 20-048, 2021 WL 1233480 (W.D.N.C. Apr. 1, 2021). In *Odell*, it is true that the VE did not express confusion at the phrase "non-production work." However, *Odell* is distinguishable in that the claimant's RFC had a limitation that the claimant could stay on task for "two-hour intervals," and there was ample evidence from medical providers and other RFC limitations from which the court could contextualized what the ALJ meant by the phrase. 2021 WL 1233480, at *6. Without a definition of "not at a production rate pace," I am unable to conclude that the RFC limitation was harmless. *See Marion J. v. Comm'r.*, *Soc. Sec. Admin.*, Civil No. SAG-18-2047, 2019 WL 2290496, at *2 (D. Md. May 29, 2019). Accordingly, remand is warranted.

On remand, the ALJ should provide an accurate and logical bridge between his decision that this RFC limitation is appropriate and the evidence upon which he relied to reach his conclusion. *Petry*, 2017 WL 680379, at *2.

**IV.   CONCLUSION**

For the reasons set forth above, both parties' summary judgment motions (ECF Nos. 11, 14) are **DENIED**. Plaintiff's alternative motion to remand this case is **GRANTED**. In addition, consistent with sentence four of 42 U.S.C. § 405(g), the Agency's judgment is **REVERSED IN**

*Kevin D. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-0567
August 9, 2022
Page 7

**PART** and the case is **REMANDED** for further proceedings consistent with this opinion.  I express no opinion as to whether the ALJ's ultimate finding that Plaintiff is not disabled and not entitled to benefits is correct.  The Clerk of the Court is directed to **CLOSE** this case.

    Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such.

    A separate Order follows.

                                            Sincerely,

                                            /s/
                                    The Honorable Gina L. Simms
                                    United States Magistrate Judge